**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

---

JENNIFER KONCZAL,

      Plaintiff,

v.                                                      Case No. 19-12275

ZIM TIM, LLC,

      Defendant.

_____/

**OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff Jennifer Konczal brings this action against Defendant Zim Tim, L.L.C., for sex discrimination under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, *et seq.*, and the Michigan Elliott-Larsen Civil Rights Act ("ELCRA"), Mich. Comp. Laws § 37.2101, *et seq.* Defendant is the owner and operator of a Tim Horton's restaurant in Southgate, Michigan. (ECF No. 1, PageID.2, ¶ 2; ECF No. 5, PageID.16, ¶ 2.) Plaintiff alleges Defendant terminated her employment as a restaurant crew member due to her pregnancy. (ECF No. 1, PageID.3-4, ¶¶ 13-15.)

Plaintiff has filed a motion for partial summary judgment. (ECF No. 27.) She argues Defendant's mitigation of damages defense fails as a matter of law. Defendant has filed a motion for summary judgment on both of Plaintiff's sex discrimination claims. (ECF No. 37.) The court has reviewed the record and does not find a hearing to be necessary. E.D. Mich. LR 7.1(f)(2). For the reasons provided below, both motions will be denied.

## I.  BACKGROUND

The following facts are taken from the record established by both parties. Those noted as proven are either agreed upon or lack contradictory evidence. Others may be noted as assumed true in the light most favorable to the non-moving party.

Defendant owns and operates a Tim Horton's coffee shop and restaurant in Southgate, Michigan. (ECF No. 37, PageID.840; ECF No. 44, PageID.1077.) Veronica Kollias was the general manager for the store and had the authority to hire and fire employees. (ECF No. 37, PageID.841; ECF No. 44, PageID.1077.)

Plaintiff applied for a position as a crew member on July 24, 2018. (ECF No. 37, PageID.841; ECF No. 44, PageID.1077.) Kollias interviewed Plaintiff, and Greg Ibarra, a supervisor for Defendant, contacted Plaintiff and offered her a position. (ECF No. 37, PageID.842; ECF No. 44, PageID.1077.) Defendant assigned Plaintiff to work night shifts. (ECF No. 37, PageID.842; ECF No. 44, PageID.1078.)

On Plaintiff's first overnight shift, she informed a co-worker, Tracy Greathouse, that she was pregnant. (ECF No. 37, PageID.843; ECF No. 44, PageID.1078.) Greathouse was assigned to work with Plaintiff and was Plaintiff's trainer. (ECF No. 37, PageID.842; ECF No. 44, PageID.1078; ECF No. 44-7, PageID.1232.) According to Plaintiff, Greathouse told Plaintiff that she needed to inform Kollias of her pregnancy because "a girl before [her] that worked there was pregnant, and [Kollias] had found out and was trying to find anything . . . to get rid of her." (ECF No. 44-6, PageID.1227; ECF No. 44-7, PageID.1232, Greathouse Affidavit; ECF No. 37, PageID.843; ECF No. 44, PageID.1078.)

2

Plaintiff and Greathouse state that Plaintiff informed Kollias of Plaintiff's pregnancy the night of her first shift and after Plaintiff's discussion with Greathouse. (ECF No. 37, PageID.843-34; ECF No. 44, PageID.1079-80.) Plaintiff testified that Kollias looked at Plaintiff "up and down" and said "okay" with disapproval. (ECF No. 44-6, PageID.1228.) Greathouse stated that Kollias was "visibly and outwardly angry." (ECF No. 44-7, PageID.1232.) In contrast, Kollias testified that Greathouse, not Plaintiff, informed Kollias of the pregnancy. (ECF No. 37-6, PageID.927; ECF No. 37, PageID.844; ECF No. 44, PageID.1080.) According to Kollias, she responded to the news by stating "oh, okay, that's cool." (ECF No. 37-6, PageID.927.)

Plaintiff worked four shifts for Defendant from July 26, 2018, to August 2, 2018. (ECF No. 37, PageID.844; ECF No. 44, PageID.1080.) For her fifth shift on August 3, 2018, Plaintiff called-off work to attend to her children. (ECF No. 44-12, PageID.1252; ECF No. 37, PageID.844; ECF No. 44, PageID.1080.) Plaintiff's husband had to work late. (ECF No. 44-12, PageID.1252; ECF No. 37, PageID.844; ECF No. 44, PageID.1080.)

Plaintiff worked another four shifts between August 5 and August 9, 2018. (ECF No. 37, PageID.845; ECF No. 44, PageID.1082.) On August 10, 2018, Plaintiff messaged Kollias and stated that Plaintiff had to go to the maternity ward when her husband got home because "[her] feet [were] extremely swollen and slightly purple." (ECF No. 44-12, PageID1253.) Plaintiff told Kollias she would "let [Kollias] know if I'm later or whatever." (*Id.*) Kollias responded: "I have to let the supervisor [at the Tim Horton's] know ASAP." (*Id.*, PageID.1254.) Plaintiff replied: "[H]opefully everything goes well and I won't have to be late but I won't know till [sic] I'm there." (*Id.*) Plaintiff testified

that she would not have "know[n] anything for sure until [she got to the maternity ward]."
(ECF No. 44-6, PageID.1224.) Eventually, Plaintiff called the Tim Horton's directly and
talked to the employee whom Plaintiff was scheduled to replace. (*Id.*) Plaintiff asserts
she made the call "towards . . . the end of [the employee's] shift." (*Id.*) In her deposition,
Plaintiff testified that she informed the employee that she was "at the hospital right now"
and that Plaintiff "[did not] know how long [she was] going to be [t]here." (*Id.*) Kollias
testified that during the August 10 shift, Greathouse informed Kollias that Plaintiff "was
not going to be able to come in after all." (ECF No. 44-4, PageID.1196.) Kollias covered
the August 10 shift for Plaintiff. (ECF No. 37, PageID.847; ECF No. 44, PageID.1084.)

Plaintiff testified that Ibarra, one of Defendant's supervisors, contacted her on
August 11, 2018, and asked if she was willing to work a shift that night. (ECF No. 44-6,
PageID.1225; ECF No. 37, PageID.847; ECF No. 44, PageID.1084.) According to
Plaintiff, she informed Ibarra that she would not work the shift. (ECF No. 44-6,
PageID.1225; ECF No. 37, PageID.847; ECF No. 44, PageID.1084.) Kollias testified
that she had told Plaintiff several days prior to August 11 that Plaintiff was scheduled to
work on August 11. (ECF No. 44-4, PageID.1197.) In contrast, Plaintiff testified that
other than by Ibarra, she was neither asked for nor accepted an August 11 shift. (ECF
No. 44-6, PageID.1225.) Kollias messaged Plaintiff on August 11 asking "[a]re you
working to night [sic]," and Plaintiff did not respond. (ECF No. 44-12, PageID.1255.)
Plaintiff did not work the August 11 shift. (ECF No. 37, PageID.848; ECF No. 44,
PageID.1085-86.)

On August 12, 2018, Kollias informed Ibarra that Kollias intended to terminate
Plaintiff's employment. (ECF No. 37, PageID.849; ECF No. 44, PageID.1090-91.)

4

Kollias tasked Ibarra with informing Plaintiff of her termination. (ECF No. 37, PageID.849; ECF No. 44, PageID.1090-91.) Ibarra called Plaintiff on August 12 and left the following voice recording on Plaintiff's phone:

> Hey, Jen, this is Greg, from Tim Horton's. So, we got the message, the text message you sent me, and with all things considered, with your situation and with you in the middle of being pregnant at the moment, we have to terminate your employment. That's what this phone call voice mail message is for. I'm getting ready to leave the store when I -- I'm done with this phone message. You can get a hold of me on my cell phone, or [Kollias], if you have any final words that you wish to say. It's just not going to work out. And I know you haven't been feeling good. It just doesn't seem right. I hope you feel better soon, and I wish you the best of luck. Thank you. Bye.

(ECF No. 44-18, PageID.1286.)

Both Plaintiff and Ibarra stated that Plaintiff called Ibarra back after the voicemail to object to being terminated because of her pregnancy. (ECF No. 44-6, PageID.1226; ECF No. 44-5, PageID.1213.) According to Plaintiff, Ibarra explained that he was "just telling [Plaintiff] what [Kollias] wanted [him] to tell [Plaintiff]." (ECF No. 44-6, PageID.1226.) Ibarra stated he "repeat[ed] the same thing" to Plaintiff when she called him back. (ECF No. 44-5, PageID.1213.)

Plaintiff filed this lawsuit on August 1, 2019. (ECF No. 1.) The parties engaged in discovery from October 2019 to October 2020. On November 19, 2020, Plaintiff moved for summary judgment on a mitigation of damages defense. (ECF No. 27.) On November 20, 2020, Defendant moved for summary judgment on Plaintiff's claims. (ECF No. 29.) However, on December 14, 2020, the court struck Defendant's motion for including irrelevant and inflammatory information on Plaintiff's life and family. (ECF No. 35.) The same day, Defendant refiled its motion without the inappropriate information. (ECF No. 37.)

## II.  STANDARD

To prevail on a motion for summary judgment, a movant must show—point out—that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). First, the moving party bears the initial burden of presentation that "demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). There is no requirement, however, that the moving party "support its motion with [evidence] negating the opponent's claim." *Id.* (emphasis removed); *see also Emp'rs Ins. of Wausau v. Petrol. Specialties, Inc.*, 69 F.3d 98, 102 (6th Cir. 1995).

Second, "the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (emphasis removed) (quoting Fed. R. Civ. P. 56(e)). This requires more than a "mere existence of a scintilla of evidence" or "'[t]he mere possibility of a factual dispute." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992) (quoting *Gregg v. Allen-Bradley Co.*, 801 F.2d 859, 863 (6th Cir. 1986)). For a court to deny summary judgment, "the evidence [must be] such that a reasonable [finder of fact] could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. All reasonable inferences from the underlying facts must be drawn "in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Moran v. Al Basit LLC*, 788 F.3d 201, 204 (6th Cir. 2015).

## III.  DISCUSSION

The court will first address Plaintiff's motion for partial summary judgment and will then turn to Defendant's motion for summary judgment.

### A.  Plaintiff's Motion

Plaintiff moves for summary judgment seeking to prevent Defendant from presenting its mitigation of damages defense. Title 42 U.S.C. § 2000e-5(g)(1) of the Civil Rights Act states that an employer engaging in unlawful discrimination can be held liable for back pay, but "[i]nterim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable." The Supreme Court in *Ford Motor Co. v. EEOC* recognized that a duty to minimize damages is "rooted in an ancient principle of law." 458 U.S. 219, 231 (1982). While a former employee "need not go into another line of work, accept a demotion, or take a demeaning position, he forfeits his right to backpay if he refuses a job substantially equivalent to the one he was denied." *Id.* The rule is designed to prevent individuals from recovering compensation for lost employment despite their refusal to work in reasonably available jobs. Individuals are not "free to impose the cost of [a] decision [not to work] on [a] former employer." *Ford v. Nicks*, 866 F.2d 865, 875 (6th Cir. 1989).

Interpreting § 2000e-5(g)(1)'s requirement of "reasonable diligence" and *Ford Motor*'s holding that a Title VII plaintiff must seek "substantially equivalent" employment, the Sixth Circuit has established the following procedure for reviewing mitigation of damages defenses:

> "Though the plaintiff bears the initial burden of establishing a prima facie case and presenting evidence on the issue of damages, the defendant

> bears the subsequent burden of 'establishing the amount of interim earnings or lack of diligence. . . . The defendant may satisfy his burden only if he establishes that: 1) there were substantially equivalent positions which were available; and 2) the claimant failed to use reasonable care and diligence in seeking such positions."

*Pittington v. Great Smoky Mountain Lumberjack Feud, LLC*, 880 F.3d 791, 800 (6th Cir. 2018) (quotations and alterations removed) (quoting *Rasimas v. Mich. Dep't of Mental Health*, 714 F.2d 614, 623-24 (6th Cir. 1983)). "A [plaintiff] is not required to submit evidence of diligence and reasonable care in seeking employment until defendant has met its burden." *Wooldridge v. Marlene Indus. Corp.*,875 F.2d 540, 548 (6th Cir. 1989).

Even if Plaintiff establishes that Defendant violated Title VII, Defendant argues that Plaintiff failed to properly mitigate her damages. (ECF No. 38, PageID.978; ECF No. 5, PageID.21.) Plaintiff claims that the defense fails as a matter of law.

## 1. Defendant's Responses to Discovery Requests and Interrogatories

Plaintiff argues that Defendant did not satisfactorily respond to her request for discovery and interrogatories made pursuant to Federal Rules of Civil Procedure 33 and 34. (ECF No. 27, PageID.298, 300-03, 305-06.) Plaintiff requested information on Defendant's mitigation of damages defense, and she claims that Defendant's responses prove that the defense has no support. (*E.g., id.*, PageID.303 ("Defendant failed to ever disclose the existence of [mitigation] evidence in its . . . interrogatory . . . . Since no such evidence exists, the . . . defense must fail as a matter of law.")

To the contrary, in its response Defendant points to evidence in support of the mitigation defense. Specifically, Plaintiff failed to accept a June 2020 job offer from Amazon, refused to work for Door Dash, and quit a job at McDonald's. (ECF No. 38, PageID.985.) To support these arguments, Defendant cites a conditional job offer from

8

Amazon, (ECF No. 38-6), Plaintiff's testimony on registering to work for Door Dash, (ECF No. 38-4, PageID.1020-23), and Plaintiff's testimony on quitting and reapplying for a job with McDonald's. (*Id.*, PageID.1009-13, 1016.)

In Plaintiff's interrogatories and requests for production from February 2020, she sought detailed information on Defendant's mitigation defense. (ECF No. 27-8; ECF No. 27-9.) Defendant responded that it had not completed discovery to substantially respond to the request. (ECF No. 27-8, PageID.367; ECF No. 27-9, PageID.374.) Specifically, Defendant explained that "it has not completed its investigation of the facts of this case, has not completed discovery, and has not taken Plaintiff's deposition . . . [Defendant] is also awaiting information requested from Plaintiff that may be responsive to the request." (ECF No. 27-9, PageID.374.) Defendant added that "[u]pon information and belief," businesses in the area [of Defendant's Southgate location] that appear to be hiring on a consistent basis include, but are not limited to, White Castle, Burger King, Wendy's, Meijer and Walmart." (ECF No. 27-8, PageID.367.)

Plaintiff cites no law to support the assertion that Defendant's failure near the beginning of the case to provide Plaintiff's version of an adequate discovery response bars Defendant *per se* from advancing this defense at trial. Plaintiff made her requests over a year ago shortly after discovery began, and she filed no motion to compel for Defendant to provide more information on its mitigation defense.

In one portion of her motion Plaintiff cites Rule 37(d) and argues that the court can impose sanctions on Defendant and bar it from advancing a mitigation defense for failing to provide adequate responses to Plaintiff's interrogatories and requests for production. (ECF No. 27, PageID.305.) Rule 37(d), titled "Party's Failure to Attend Its

Own Deposition, Serve Answers to Interrogatories, or Respond to a Request for Inspection" states as follows:

> The court where the action is pending may, on motion, order sanctions if:
>
> (i) a party or a party's officer, director, or managing agent--or a person designated under Rule 30(b)(6) or 31(a)(4)--fails, after being served with proper notice, to appear for that person's deposition; or
>
> (ii) a party, after being properly served with interrogatories under Rule 33 or a request for inspection under Rule 34, fails to serve its answers, objections, or written response.

The rule permits the court, at its discretion, to sanction the offending party by "prohibiting [it] from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence." Fed. R. Civ. P. 37(b)(2)(A)(ii), (d)(3).

First, the unambiguous text of Rule 37(d) states that the court may sanction a party "on motion" from the opposing party. Plaintiff has never filed a motion for sanctions pursuant to Rule 37(d), from the time of Defendant's responses in February 2020 to the present.

Second, even if Plaintiff had moved for sanctions, Rule 37(d) is not designed to resolve debatable questions over whether a parties' discovery responses were inadequate or incomplete. The rule's title refers to a party's "*[f]ailure*" to attend depositions, serve answers to interrogatories, or respond to requests for inspection. The main text of the rule sates that a court can impose sanctions under Rule 37(d) when a party "*fails* to serve its answers" or "appear [at a] deposition." "Failure" is defined as "omitting to perform something due or required; default." *Failure, Oxford English Dictionary* (2021). In the context of Rule 37(d), to warrant sanctions, a party must have

not responded to discovery requests and defaulted on its obligations entirely, or performed such an inadequate job that its responses amount to no responses at all.

If a party wishes to contest the adequacy of responses that were made, the party must file a motion to compel pursuant to Rule 37(a). Unlike Rule 37(d), Rule 37(a) extends its scope beyond common understandings of "failure" to all discovery responses that are "evasive or incomplete." Fed. R. Civ. P. 37(a)(4). Further, Rule 37(a) provides the offending party the opportunity to rectify its discovery lapses. The court can award only attorney fees for violations of Rule 37(a), and the court can impose more severe sanctions, such as barring use of a defense, only after the offending party violates a court order. *See* Fed. R. Civ. P. 37(b).

The committee notes of the Federal Rules of Civil Procedure confirm that Rule 37(d) was enacted to prevent "total noncompliance" or "complet[e] silen[ce]" when a party performs its discovery obligations. Fed. R. Civ. P. 37 Advisory Committee Note (1970); *see United States v. Tenn. Walking Horse Breeders' and Exhibitors' Ass'n*, 727 F. App'x 119, 124 (6th Cir. 2018) (quoting *United States v. Vonn*, 535 U.S. 55, 64 n.6 (2002)) (reasoning that committee notes "provide a reliable source of insight into the meaning of a rule."); *see, e.g.*, *Miltimore Sales, Inc. v. Int'l Rectifier, Inc.*, 412 F.3d 685, 689-90 (6th Cir. 2005) (relying heavily on committee notes to determine the meaning of Federal Rules of Procedure). The rule was created to force parties, if they disputed a disposition or discovery request, to "apply for a protective order" or seek court assistance rather than completely ignore the opposing party. Fed. R. Civ. P. 37 Advisory Committee Note (1970).

11

Wright and Miller agree. They state that Rule 37(d) "is inapplicable" when a party responds to an interrogatory or discovery request "but the answers are thought to be incomplete or evasive." 8B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2291 (3d ed. 2020). And the Sixth Circuit has repeatedly applied Rule 37(d) in the context of a party's failure to participate in discovery. *See United States v. Reyes*, 307 F.3d 451, 458 (6th Cir. 2002) (holding that Rule 37(d) sanctions were appropriate where a party failed to respond to requests to produce documents); *Norris v. MK Holdings, Inc.*, 734 F. App'x 950, 957 (6th Cir. 2018) (affirming sanctions under Rule 37(d) where a party did not file responses to interrogatories by the deadline set by Rule 33); *EMW Women's Surgical Center, P.S.C. v. Friedlander*, 978 F.3d 418, 447 (6th Cir. 2020) (applying Rule 37(d) where a party failed to appear for a deposition); *Monogram Models, Inc. v. Industro Motive Corp.*, 492 F.2d 1281, 1287 (6th Cir. 1974) (noting that a party failed to respond to interrogatories and reasoning that "Rule 37(d) clearly places on the party receiving interrogatories the burden either to answer them or to state his objections").

Plaintiff filed no motion to compel under Rule 37(a) for Defendant to provide more complete and substantive discovery responses, but waited until the summary judgment stage, after discovery closed, to argue that Defendant's discovery responses over a year earlier were inadequate. Plaintiff does not assert or present evidence that she followed up with Defendant, sent Defendant other interrogatories or discovery requests at a different time, or sought agreement with Defendant through the course of discovery to obtain the information Plaintiff sought. An eleventh-hour Rule 37(d) citation will not defeat Defendant's mitigation defense. Rule 37(d) is not designed to resolve

12

debatable questions on the quality of discovery responses. Plaintiff's motion on this issue is unsupported, and will be denied.

### 2.  Factual Basis for the Mitigation Defense

Plaintiff also argues that Defendant lacks a factual basis for a mitigation defense. (ECF No. 27, PageID.298-301.) She claims that she "began her job search immediately upon learning of her termination, she inquired into and applied for jobs at all of the businesses within walking distance of her home, she applied for jobs beyond walking distance when she had a car available to her, she accepted the jobs offered to her, and her job search continued throughout each intermittent period of unemployment following her termination by defendant." (*Id.*, PageID.301.) To support these assertions, Plaintiff cites evidence in the record. (*Id.*)

However, as described above, Defendant also presents evidence in support of a mitigation of damages defense. (ECF No. 38, PageID.985.) Defendant attaches a "[job] offer" from Amazon, sent on June 4, 2020, that was contingent only on Plaintiff passing a background check and drug screening. (ECF No. 38-6, PageID.1035-36.) In addition, Defendant cites to Plaintiff's testimony where she confirmed that she was registered to work for Door Dash but has never done so. (ECF No. 38-4, PageID.1020-23.) Defendant also points to Plaintiff's statements that she quit her job at McDonald's and soon thereafter reapplied unsuccessfully. (*Id.*, PageID.1009-13, 1016.)

The Sixth Circuit has repeatedly recognized that whether a plaintiff "has exercised reasonable diligence in seeking other suitable employment following a discriminatory discharge is an issue of fact." *Rasimas*, 714 F.2d at 623; *Ford v. Nicks*, 866 F.2d at 873 (noting that determinations of "the issue of mitigation of damages is a

13

factual finding"); *United States v. City of Warren*, 138 F.3d 1083, 1098 n.13 (6th Cir. 1998) ("Generally . . . the mitigation of damages is an issue of fact."). Defendant has in fact presented evidence in support of a mitigation of damages defense, and, drawing all reasonable inferences in its favor, Defendant could succeed at reducing Plaintiff's back pay if a jury holds it liable under Title VII. *Moran*, 788 F.3d at 204. The court will not resolve the factual disputes about sufficiency of the evidence at the summary judgment stage.

Plaintiff adds arguments in her reply to contest Defendant's positions. First, she cites her own testimony indicating that the Amazon position was merely an offer to interview, not a job offer that Plaintiff could accept at her choosing. (ECF No. 27-3, PageID.326-27.) The communication from Amazon that Defendant attaches to its briefing states that it is an "offer . . . contingent upon completing and successfully passing the required background check and drug screening." (ECF No. 38-6, PageID.1036.) Amazon made no mention of an "interview" in the job offer. (*Id.*) Plaintiff does not challenge the authenticity or accuracy of this communication, and a finder of fact is free to conclude that Plaintiff could have accepted the position without conducting an interview.

Plaintiff adds that she could not attend an interview with Amazon because her car was totaled the day after Amazon contacted her. (ECF No. 27-3, PageID.326.) However, Amazon's communication stated that she was given an offer to work which could be accepted upon completing of a drug test and background check. (ECF No. 38-6, PageID.1036.) The jury could easily conclude that Amazon required only that Plaintiff provide a negative drug screening and background information to begin the job. While

Plaintiff states she "had gone back" and contacted Amazon for a job after her car was totaled, Plaintiff specified no date, and in her testimony, she provided no details as to whether she stayed in reasonable communication with Amazon after it extended the conditional job offer. (ECF No. 27-3, PageID.326.) Plaintiff obtained a new car three weeks after the older car was damaged. (*Id.*, PageID.330.) In all, Plaintiff's citation to her own testimony does not justify summary judgment when Defendant presents evidence of an open offer.

Second, Plaintiff attacks Defendant's reliance on Plaintiff's Door Dash registration. (ECF No. 40, PageID.1053-54.) Plaintiff again cites her own testimony that her car was wrecked the day after she applied and received authorization to work for Door Dash. (*Id.*, PageID.327.) However, it remains true that Plaintiff had acquired a new car within three weeks of her old car being lost. (*Id.*, PageID.330.) After that, she was still registered to work for Door Dash but chose not to do so because she began to work for a Circle K. (*Id.*, PageID.327.) Because the Circle K job was part time, Plaintiff testified that her schedule allowed her to work for Door Dash even after she started working at Circle K. (*Id.*, PageID.327-28.) A trier of fact could conclude that Plaintiff did not make reasonable efforts to gain supplemental income through Door Dash.

Third, Plaintiff contests Defendant's reliance on Plaintiff's McDonald's job, arguing that she quit the job because it was unsanitary. (ECF No. 40, PageID.1054-55.) However, Plaintiff also provided indications that she quit because of her conflict with a supervisor. When Plaintiff was asked "what caused you to leave McDonald's," she responded: "[a]n issue with a manager." (ECF No. 27-3, PageID.321.) Plaintiff later explained that the manager "let the power get to her head and it was causing problems."

(*Id.*, PageID.322.) After quitting, Plaintiff attempted to return to the job because she

liked the job "minus the manager that [she] was having an issue with" and felt like she

was "putting [her] responsibilities on someone else." (*Id.*, PageID.324.) Plaintiff's

arguments may or may not prove convincing to a jury, but summary judgment is not

warranted. A factual question remains whether Plaintiff used "reasonable diligence" to

mitigate her damages. 42 U.S.C. § 2000e-5(g)(1); *Rasimas*, 714 F.2d at 623. Plaintiff's

motion for summary judgment will be denied. Fed. R. Civ. P. 56(a).

### B. Defendant's Motion

Defendant moves for summary judgment on both Plaintiff's Title VII and ELCRA

claims. It claims Plaintiff has not presented evidence of discriminatory intent and that

Defendant terminated Plaintiff's employment because of her attendance record not due

to Plaintiff's pregnancy. (*See* ECF No. 37, PageID.853-57.)

Title VII of the of the Civil Rights Act of 1964 makes it illegal for "an employer . . .

to fail or refuse to hire or to discharge any individual, or otherwise to discriminate

against any individual with respect to his compensation, terms, conditions, or privileges

of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). The

law defines discrimination "because of sex" to include discrimination "on the basis of

pregnancy." 42 U.S.C. § 2000e(k); *see Tysinger v. Police Dep't of City of Zanesville*,

463 F.3d 569 (6th Cir. 2006) ("Under the Pregnancy Discrimination Act provisions of

Title VII, discrimination because of or on the basis of pregnancy, childbirth, or related

medical conditions is defined as a kind of sex discrimination and is prohibited.").

A plaintiff can prove sex discrimination through either direct evidence or

circumstantial evidence. "Direct evidence is that evidence which, if believed, requires

the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *White v. Columbus Metro. Housing Auth.*, 429 F.3d 232, 238 (6th Cir. 2005) (quoting *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 926 (6th Cir. 1999)). Examples of direct evidence include "[a] facially discriminatory employment policy or a . . . decision maker's express statement" of discriminatory intent. *EEOC v. R.G & G.R. Harris Funeral Homes, Inc.*, 884 F.3d 560, 571 (6th Cir. 2018), *aff'd on other grounds sub nom.*, *Bostock v. Clayton Cnty.*, 140 S. Ct. 1731 (2020). "Once the plaintiff has produced credible direct evidence, the burden shifts to the employer to show that it would have taken the employment action of which the plaintiff complains even in the absence of discrimination." *White*, 429 F.3d at 238.

## 1.  Direct Evidence of Discriminatory Intent

Here, Plaintiff has presented evidence that Kollias, the manager at Tim Horton's, talked to Ibarra, a supervisor, in person on August 12, 2018, and Kollias told Ibarra that Plaintiff would be terminated and why. (ECF No. 44-5, PageID.1211.) Ibarra testified that Kollias described the reasons for Plaintiff's termination, and Ibarra "quickly wrote it down and jotted down." (*Id.*, PageID.1212.) Ibarra apparently tried "to word . . . out" the explanation for Plaintiff's termination so that it "sound[ed] professional." (*Id.*) In his testimony, Ibarra confirmed that Kollias's explanation was "still fresh in [his] mind" when he wrote it down and that "what [he] stated in the voicemail message" left on Plaintiff's phone "was . . . in substance what [he] had written down." (*Id.*)

Kollias tasked Ibarra with informing Plaintiff of her termination and the reasons for the decision. (ECF No. 37, PageID.849; ECF No. 44, PageID.1090-91.) Both parties accept that Ibarra called Plaintiff on August 12, 2018, and stated: "[A]ll things

17

considered, with your situation and with you in the middle of being pregnant at the moment, we have to terminate your employment." (ECF No. 44-18, PageID.1286.) In the voicemail, Ibarra added: "It just doesn't seem right." (*Id.*)

Plaintiff testified that she called Ibarra back and protested that she could not be legally terminated for being pregnant. (ECF No. 44-6, PageID.1226.) Ibarra apparently defended Defendant's decision and explained that he was "just telling [Plaintiff] what [Kollias] wanted [him] to tell [Plaintiff]." (*Id.*) Kollias confirmed that she never had any other communication with Plaintiff regarding the basis for the decision to terminate Plaintiff's employment. (ECF No. 44-4, PageID.1183.)

Plaintiff argues that "[i]t is difficult to imagine a statement more deserving of the direct evidence classification as this recorded statement by Mr. Ibarra." (ECF No. 44, PageID.1118.) Ibarra explicitly stated that Plaintiff's "situation and with [her] . . . being pregnant" meant Defendant had "to terminate [her] employment." (ECF No. 44-18, PageID.1286.)

Nonetheless, Defendant argues that Kollias, not Ibarra, was the ultimate decision maker and that Ibarra was merely a messenger. (ECF No. 37, PageID.855-56.) But Ibarra left the voicemail on Plaintiff's phone *on behalf of* Kollias. Plaintiff offered evidence that Kollias told Ibarra why Plaintiff was being terminated, Ibarra wrote Kollias's reasoning down while it was still fresh in his mind, and the voicemail was "in substance" what he had written down. (ECF No. 44-5, PageID.1211-12.) Plaintiff testified that she called Ibarra, and he explicitly linked the decision to terminate Plaintiff due to her pregnancy to "what [Kollias] wanted." (ECF No. 44-6, PageID.1226.) Drawing all reasonable inferences in Plaintiff's favor, *Moran*, 788 F.3d at 204, a juror could find

that Ibarra accurately communicated Kollias's true reason for terminating Plaintiff's employment, a job Ibarra was admittedly tasked to perform. (ECF No. 37, PageID.849; ECF No. 44, PageID.1090-91.) Defendant cites no law explaining why a "decision maker's express statement" of discriminatory intent would qualify as direct evidence of discrimination, *EEOC*, 884 F.3d at 571, while a decision maker's delegation to a subordinate the task of making the same statement would not.

The ultimate inquiry is whether the evidence offered, "if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *White*, 429 F.3d at 238. From Defendant's notice of termination, made by means of Ibarra's voicemail and his subsequent conversation with Plaintiff, a jury could conclude that Plaintiff's pregnancy "was at least a motivating factor" in Defendant's actions. *Id.*

The Sixth Circuit has barred use of a manager's statement of discriminatory intent where the manager had little to no involvement in the employment decision. *See Carter v. Univ. of Toledo*, 349 F.3d 269, 273 (6th Cir. 2003) (holding that a university administrator's description of discriminatory intent was not direct evidence because the administrator was "not involved in the decision-making process" and made the relevant remarks after a post-decision investigation); *Hopson v. DiamlerChrysler Corp.*, 306 F.3d 427, 433 (6th Cir. 2002) (finding that a manager's statement supporting discriminatory intent was not direct evidence where the manager had "no involvement in the decision-making process" and "did not reveal the basis for [the] opinion"); *Wharton v. Gorman-Rupp Co.*, 309 F. App'x 990, 996 (6th Cir. 2009) (holding that a manager's description of discriminatory intent was direct evidence even though he was not the ultimate

decision maker because he witnessed "all or most aspects of the hiring process"). Here, Ibarra was intimately involved in the termination process: the parties accept that Kollias informed him directly of the reasons for the decision and that Kollias delegated to Ibarra the official responsibility of notifying Plaintiff of Defendant's actions. (ECF No. 37, PageID.849; ECF No. 44, PageID.1090-91; ECF No. 44-5, PageID.1211-12.) Drawing inferences in Plaintiff's favor, *Moran*, 788 F.3d at 204, Ibarra was far from an out-of-the-loop manager merely advancing his own opinion. *See Carter*, 349 F.3d at 273; *Hopson*, 306 F.3d at 433.

Defendant mentions in passing, and without citation or argument, that Ibarra's discussion with Plaintiff when Plaintiff returned his call "is inadmissible hearsay."[1] (ECF No. 37, PageID.856.) However, as Plaintiff notes, the statements Ibarra made to Plaintiff would qualify as non-hearsay under Federal Rule of Evidence 801(d)(2)(D). (ECF No. 44, PageID.1122-23.) Under Rule 801(d)(2)(D), a statement is not hearsay if it is offered against the opposing party and the statement was "made by the party's agent or employee on a matter within the scope of that relationship and while it existed." Ibarra was a supervisor at Defendant's company and was given the responsibility to call Plaintiff and inform her of her termination. (ECF No. 37, PageID.849, 847; ECF No. 44, PageID.1090-91, 1077.) It was "within the scope of [Ibarra's] relationship" with Defendant to discuss with Plaintiff her termination and the justifications for it, Fed. R.

---

[1]     It is not the court's responsibility to develop legal arguments on behalf of Defendant. As the Sixth Circuit explained in *McPherson v. Kelsey*, "[i]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones." 125 F.3d 989, 995-96 (6th Cir. 1997) (quotations and alterations removed).

Evid. 801(d)(2)(D), which Kollias had provided Ibarra prior to the phone call. *See Carter*, 349 F.3d at 276 (holding that a manger's general involvement in hiring practices allowed for the admission of statements made regarding an employment decision); *Back v. Nestle USA, Inc.*, 694 F.3d 571, 577 (6th Cir. 2012) (finding that statements from a manager who had employment and termination responsibilities that indicated discriminatory intent on the part of a company could be admitted, even if the manager did not make the final decision); 30B Wright & Miller, *supra*, § 6776 ("Qualifying statements will arise when an employee or agent speaks about matters that are (or were) within her job responsibilities."). (ECF No. 44-5, PageID.1211-12.)

Defendant also argues that Plaintiff inappropriately relies on inferences to find that the Ibarra voicemail supports a claim of sex discrimination. (ECF No. 37, PageID.856.) According to Defendant, the voicemail is too ambiguous as to the reasons for Plaintiff's termination to qualify as direct evidence. (*Id.*) Defendant's reading of the voicemail is implausible. Ibarra told Plaintiff that "with all things considered . . . and with you in the middle of being pregnant," Defendant was terminating Plaintiff's employment. (ECF No. 44-18, PageID.1286.) A plain reading of the statement is that Plaintiff was terminated "consider[ing]" that she was "in the middle of being pregnant." (*Id.*) Ibarra himself testified that Plaintiff's pregnancy was a reason stated in the voicemail for her termination. (ECF No. 44-5, PageID.1213 (stating that, in the voicemail, he told Plaintiff "that she's terminated for the mere fact that she was pregnant"); *see also* ECF No. 44-4, PageID.1182 (Kollias testifying how an employee informed her of the news that Ibarra had told Plaintiff she was terminated "because she was pregnant").) This is not a case where the evidence Plaintiff advances does not directly concern the employment action

21

at issue, requiring a trier of fact to infer discriminatory intent from relevant but ancillary information. *See Johnson v. Kroger Co.*, 319 F.3d 858, 865 (6th Cir. 2003) (finding that a plaintiff had not presented direct evidence of racial discrimination where a supervisor allegedly stated in general terms that an African American manager would be detrimental for the company and that the plaintiff was unintelligent); *Burke-Johnson v. Dep't of Veterans Affairs*, 211 F. App'x 442, 451 (6th Cir. 2006) (holding that statements that an employer discriminated against another employee, the employer disparaged the plaintiff, and African Americans faced obstacles to advancement did not qualify as direct evidence of discrimination).

Plaintiff has presented direct evidence that her pregnancy was "at least a motivating factor" in Defendant's decision to terminate her employment. *White*, 429 F.3d at 238. Genuine issues of fact remain, and summary judgment is not appropriate. Fed. R. Civ. P. 56(a).

## 2.  Defendant's Non-Discriminatory Justification

Defendant argues that it is entitled to summary judgment even if Plaintiff has presented direct evidence of discriminatory intent. According to Defendant, it "would have [terminated Plaintiff's employment] even in the absence of discrimination." *White*, 429 F.3d at 238. Defendant claims that Plaintiff "had at least two absences within her first two weeks of employment," which provided an independent ground for termination. (ECF No. 37, PageID.857.)

The parties agree that Plaintiff "called off" or did not appear for two of her shifts between July 26, 2018, to August 10, 2018. (ECF No. 37, PageID.844-45; ECF No. 44, PageID.1080, 1082.) However, they disagree as to whether Plaintiff properly called off

her shift on August 10, 2018. Plaintiff told Kollias that she had to go to the maternity ward, and Plaintiff called the Tim Horton's restaurant directly to tell an employee that she was at the hospital and was not certain how long she would be delayed. (ECF No. 44-12, PageID1253; ECF No. 44-6, PageID.1224.) Kollias testified that Plaintiff never informed Kollias of her intended absence and that Greathouse gave Kollias the update. (ECF No. 44-4, PageID.1196.) Furthermore, the parties contest whether Plaintiff was scheduled to work on August 11, 2018. Kollias testified that Plaintiff had agreed to work that day, (ECF No. 44-4, PageID.1197), while Plaintiff states she explicitly declined an August 11 shift. (ECF No. 44-6, PageID.1225.) Thus, factual issues exist regarding Plaintiff's attendance record during these relevant few days.

Moreover, Plaintiff has cited evidence undermining Defendant's explanation for Plaintiff's termination. Drawing all inferences in Plaintiff's favor, *Moran*, 788 F.3d at 204, a reasonable juror could review the record and find that Defendant has not met its burden of proving that it would have terminated Plaintiff's employment "even in the absence of discrimination." *White*, 429 F.3d at 238; *Anderson*, 477 U.S. at 248. Ibarra testified that it was "very common[]" for crew members who were newly hired to "call off on multiple times or multiple occasions." (ECF No. 44-5, PageID.1214.) Similarly, Greathouse, Plaintiff's former coworker, stated in an affidavit that "[i]t was a fairly common occurrence for newly-hired crew members to call-off from work 2-3 times during their first 3-4 weeks of employment . . . [s]uch crew members were not terminated for doing so." (ECF No. 44-7, PageID.1233.) Defendant's two owners also testified that if a new crew member missed work on two occasions for "childcare issues" or "medical problem[s]," the crew member would not be subject to termination. (ECF No.

23

44-2, PageID.1153; ECF No. 44-3, PageID.1161-62.) Plaintiff presents evidence, albeit contested, she missed only two scheduled shifts during her employment with Defendant, the first being for childcare and second being for a medical issue. (ECF No. 44-12, PageID.1252-53; ECF No. 44-6, PageID.1224-25; ECF No. 37, PageID.844, 847; ECF No. 44, PageID.1080, 1084.)

Further, despite evidence of Plaintiff's attendance record, Ibarra's voicemail explicitly mentions Plaintiff's pregnancy as a basis for her termination. (ECF No. 44-18, PageID.1286.) According to Plaintiff, she called Ibarra, who confirmed the decision. (ECF No. 44-6, PageID.1226.) Both Greathouse and Plaintiff stated that Kollias became visibly angry when Plaintiff informed Kollias of Plaintiff's pregnancy. (ECF No. 44-7, PageID.1231-32; ECF No. 44-6, PageID.1228.) Further, according to Greathouse, another female employee, Christina Cabiness, became pregnant before Plaintiff was hired. (ECF No. 44-7, PageID.1232.) Greathouse stated Kollias was noticeably angry about Cabiness's pregnancy, and Greathouse observed that Kollias "began to closely scrutinize . . . Cabiness and look for reasons to terminate her." (*Id.*) Cabiness was apparently terminated soon thereafter. (*Id.*) Plaintiff cites an affidavit from Cabiness, who stated that she told Kollias of her pregnancy and Kollias "got visibly angry." (ECF No. 44-9, PageID.1240.) According to Cabiness, after she informed Kollias of the pregnancy, Kollias "immediately became nasty toward me, started scrutinizing my work, and started nit-picking my performance for criticism." (*Id.*) Cabiness was fired a week or two after she informed Kollias of the pregnancy. (*Id.*) In all, the evidence can support the conclusion that Kollias maintained an animus toward pregnant women, became angry

and hostile when she learned that crew members were pregnant, and terminated Plaintiff's employment on the basis of her pregnancy.

There remain genuine questions of fact as to whether Defendant would have terminated Plaintiff if it were not for Plaintiff being pregnant, and summary judgment is not warranted. Fed. R. Civ. P. 56(a). Defendant does not distinguish between its analysis on Plaintiff's Title VII and ELCRA claims. According to Defendant, an ECLRA claim "must be analyzed in the same manner as . . . [a] Title VII [claim]." (ECF No. 37, PageID.862.) Because Defendant is not entitled to summary judgment for Plaintiff's Title VII claim, it is also not entitled to summary judgment for Plaintiff's ELCRA claim.

## IV. CONCLUSION

Defendant may present a mitigation of damages defense, and questions of fact remain as to whether Defendant terminated Plaintiff's employment because of her pregnancy. Accordingly,

IT IS ORDERED that Plaintiff's Motion for Partial Summary Judgment (ECF No. 27) is DENIED.

IT IS FURTHER ORDERED that Defendant's Motion for Summary Judgment (ECF No. 37) is DENIED.

s/Robert H. Cleland                              /
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated:  April 15, 2021

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, April 15, 2021, by electronic and/or ordinary mail.

s/ Lisa Bartlett for Lisa Wagner            /
Case Manager and Deputy Clerk
(810) 292-6522

S:\Cleland\Cleland\JUDGE'S DESK\C2 ORDERS\19-12275.KONCZAL.CrossMotionsforSummaryJudgment.RMK.RHC.2.docx